UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTERIUS BECK (Y-13542), | ) |
| Plaintiff, | ) |
| v. | ) No. 20 C 5329 |
| CITY OF CHICAGO, ET AL., | ) Judge Rebecca R. Pallmeyer |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff's application for leave to proceed *in forma pauperis* [7] is granted. The court orders the trust fund officer at Plaintiff's place of incarceration to deduct $7.12 from Plaintiff's account for payment to the Clerk of Court as an initial partial payment of the filing fee and to continue making monthly deductions in accordance with this order. The Clerk is directed to send a copy of this order to the trust fund officer at Dixon Correctional Center and to the court's Fiscal Department. Summons, however, shall not issue at this time. Plaintiff's complaint does not state a valid federal claim and is dismissed. *See* 28 U.S.C. § 1915A. To the extent Plaintiff asserts or seeks to assert state-law claims, such as malicious prosecution, those claims are dismissed for lack of jurisdiction and without prejudice to Plaintiff's bringing them in state court. The dismissal of this case counts as one of Plaintiff's three allotted dismissals under 28 U.S.C. § 1915(g). The Clerk is directed to terminate any pending motion as moot, and final judgment shall enter.

## BACKGROUND

In his complaint, Plaintiff states that he was arrested on August 7, 2015, by Chicago Police Officers Wyroba, Heyden, and Apacible. (Compl. [1] at 1.) Plaintiff does not describe the incident that led to his arrest, but the Illinois appellate court's opinion on Plaintiff's state court appeal provides context: On August 7, 2015, Officers Wyroba, Heyden, and Apacible were working in various locations near the 700 block of North Lorel Avenue in Chicago. *People v. Beck*, 2019 IL App (1st) 161626 ¶¶ 3–7, 131 N.E.3d 1111, 1115 (1st Dist. 2019). Apacible received information

1

(the appellate court does not say how) that a black man wearing a blue sweatshirt, white T-shirt, and red pants was seen nearby with a gun. *Id.* Wyroba noticed a man, later identified as Plaintiff, matching that description. *Id.* The man was standing with a large group of people and Wyroba saw him put a handgun into his pocket. *Id.* Wyroba alerted other officers in the area, including Heyden, who exited his unmarked police car upon receiving the alert. *Id.* Plaintiff saw Heyden and began running, followed by Heyden, Wyroba, and Apacible. *Id.* While running, Plaintiff threw a gun on the ground, which Heyden recovered. *Id.* Apacible and Wyroba continued to chase Plaintiff and eventually caught and arrested him. *Id.*

Following the arrest, Plaintiff was charged with one count of unlawful possession of a firearm by a street gang member and ten counts of aggravated unlawful use of a weapon ("AUUW"). *Beck*, 2019 IL App (1st) 161626 ¶ 1, 131 N.E.3d at 1114. Officers Wyroba and Heyden testified at Plaintiff's 2016 trial.[1] (Compl. at 3.) Plaintiff was convicted of all eleven counts and received a five-year sentence, of which Plaintiff states he ultimately served thirty months. (*Id.* at 2; *see also Beck*, 2019 IL App (1st) 161626 ¶ 1, 131 N.E.3d at 1114.)

Plaintiff appealed his conviction, and, on June 18, 2019,[2] the First District Appellate Court of Illinois reversed his conviction for possession of a firearm by a street gang member because the prosecution had not presented evidence at trial sufficient to establish every element of that offense. (Compl. at 2; *Beck*, 2019 IL App (1st) 161626 ¶ 20, 131 N.E.3d at 1118.) Specifically, 720 ILCS 5/24-1.8 prohibits the possession of a gun in public places by a member of a street gang who has not been issued a currently valid Firearm Owner's Identification Card ("FOID card").

---

[1] Neither Plaintiff's complaint nor his state appeal clarifies whether Officer Apacible also testified. (*See* Compl. at 3; *see also Beck*, 2019 IL App (1st) 161626 ¶¶ 1–7, 131 N.E.3d at 1114–15.)

[2] Plaintiff states his conviction was overturned on October 11, 2019, but the date of the decision is June 18, 2019. Plaintiff also alleges the statute under which he was convicted was deemed unconstitutional. (Compl. at 2.) To the contrary, although Plaintiff did argue that the gun possession statute under which he was convicted was unconstitutional, the court did not reach this issue. *Beck*, 2019 IL App (1st) 161626 ¶ 21, 131 N.E.3d at 1118.

The statute defines a street gang as a group of three or more people who, among other requirements, have committed two or more gang-related crimes within the span of five years. 740 ILCS 147/10. The appellate court determined the prosecution had not presented proof that the group to which Plaintiff belonged—the "Black P. Stones"—had committed the requisite crimes to be considered a street gang. Therefore, the court reversed Plaintiff's conviction for unlawful possession of a gun by a street gang member. *Beck*, 2019 IL App (1st) 161626 ¶¶ 18, 20, 131 N.E.3d. at 1117–18.

The court affirmed Plaintiff's convictions on the ten AUUW counts. *Beck*, 2019 IL App (1st) 161626 ¶ 1, 131 N.E.3d at 1115. Because those counts had merged with the gun possession conviction, the case was remanded to the trial court for resentencing. (Compl. at 2; *Beck*, 2019 IL App (1st) 161626 ¶¶ 1, 36, 131 N.E.3d at 1115, 1121–22.) Plaintiff was resentenced to three years imprisonment for the AUUW convictions, but by that point, he claims he had already served more than one year in prison beyond the new three-year sentence.[3] (Compl. at 2.)

Based on the events described above, Plaintiff alleges Officer Wyroba "brought an unconstitutional charge" against him, Officer Heyden "was deliberate[ly] indifferen[t] under the act of helping file the charges against Plaintiff Beck, and arresting him under these charges," and Officer Apacible "also took action within this unconstitutional charge" and "acted in deliberate indifference in this matter." (Compl. at 3–4.) Plaintiff names the Chicago Police Department and the City of Chicago as Defendants because they oversee police operations. (*Id.* at 4.) Plaintiff seeks compensation for "excessive confinement." (*Id.* at 5.) The court understands the complaint

---

[3] Plaintiff's calculation of his AUUW sentence requires some explanation. Plaintiff states he served a total of thirty months of his original five-year sentence. Given that thirty months is half of five years, the court presumes Plaintiff received the maximum amount of day-for-day sentence credit to reduce his sentence. *See* 730 ILCS 5/3-6-3(a)(2.1) ("[A] prisoner who is serving a term of imprisonment shall receive one day of sentence credit for each day of his or her sentence of imprisonment or recommitment under Section 3-3-9. Each day of sentence credit shall reduce by one day the prisoner's period of imprisonment or recommitment under Section 3-3-9."). Plaintiff appears to assume he would have received sentence credit at the same rate for his AUUW sentence, reducing the total incarceration time to one and a half years. Therefore, Plaintiff alleges the two and a half years he actually served was one year too long.

3

to assert claims of false arrest, malicious prosecution, and wrongful incarceration.

Plaintiff also appears to be attempting to state a claim regarding delays in his state criminal appeal. He alleges that an unnamed individual in the Cook County Clerk's office violated his constitutional rights because, although Plaintiff filed his motion to appeal his criminal charges on May 18, 2016, the clerk did not file the record on appeal until December 12, 2016. (*Id.* at 5; *see also Beck*, 2019 IL App (1st) 161626, 131 N.E.3d at 1116 n.3.) Plaintiff alleges this meant the state appellate court was unable to consider Plaintiff's appeal promptly, and, by the time the court reversed his conviction, he had already completed his sentence. (Compl. at 5.)

The court concludes, as explained below, that Plaintiff has not presented any valid federal claim for relief.

## DISCUSSION

**A.     In Forma Pauperis**

Plaintiff Anterius Beck, a state prisoner, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging several constitutional violations stemming from the reversal of one of his state convictions. As Plaintiff's application for leave to proceed *in forma pauperis* demonstrates that he cannot prepay the filing fee, that application is granted. Pursuant to 28 U.S.C. § 1915(b)(1)–(2), the court orders the following: (1) Plaintiff shall immediately pay (and the facility having custody of him shall automatically remit) $7.12 to the Clerk of Court for payment of the initial partial filing fee, and (2) Plaintiff shall pay (and the facility having custody of him shall automatically remit) to the Clerk of Court twenty percent of the money he receives for each calendar month during which he receives $10.00 or more, until the $350 filing fee is paid in full. The court directs the Clerk to ensure that a copy of this order is mailed to each facility where Plaintiff is housed until the filing fee has been paid in full. All payments shall be sent to the Clerk of Court, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor and shall clearly identify Plaintiff's name and the case number assigned to this case.

**B.** **Section 1915A**

Under 28 U.S.C. § 1915A, the court is required to screen prisoners' complaints and dismiss a complaint, or any claims therein, if the court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. *See Jones v. Bock*, 549 U.S. 199, 214 (2007); *see also Turley v. Rednour*, 729 F.3d 645, 649 n.1 (7th Cir. 2013). Courts screen prisoners' complaints in the same manner they review motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). The court properly considers both the complaint and other public records in reviewing these claims. *See Olson v. Champaign Cnty.,* 784 F.3d 1093, 1097 n.1 (7th Cir. 2015) ("[W]e may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6).")

**I.** **Delays in State Appeal**

First, Plaintiff fails to state a claim against the unidentified Cook County Clerk of Court employee. Plaintiff appears to be asserting that the failure to promptly transmit the record on

appeal to the appeals court violated his rights to access the courts and to due process.[4] "The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process." *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). Where a plaintiff alleges that a defendant interfered with his access to the courts, he must show actual injury and that the purported interference was intentional as opposed to merely negligent. *Id.* at 291 n.11 ("[A]n allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts") (citing *Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995)).

Importantly, however, an access-to-courts claim is not available to a plaintiff who had other means in state court of remedying the harm caused by the alleged denial of access. *See Sherrod v. Grosoboll*, No. 13 C 6800, 2014 WL 523395, at *2–3 (N.D. Ill. Feb. 7, 2014) (finding no denial of access to court claim where Illinois Supreme Court clerk refused to file a litigant's petition for leave to appeal, as there were available avenues to correct error and clerk's actions did not hinder litigant's access in the constitutional sense); *see also Kaprelian v. Barrett*, No. 14-CV-546, 2015 WL 248047, at *4 (E.D. Wis. Jan. 20, 2015) (finding no denial of access claim where court clerk lost or intentionally refused to file notice of appeal, when litigant could petition the Wisconsin Supreme Court for a writ of mandamus to compel its filing or file other court requests to obtain the same relief), *aff'd on other grounds*, 607 Fed. App'x 583 (7th Cir. 2015). In Plaintiff's case, it appears there were avenues for addressing the clerk's delay—for example, a petition to the

---

[4] In addition to the Fourteenth Amendment, Plaintiff identifies the Sixth and Fourth Amendments as the constitutional basis for this claim. The court infers Plaintiff is referring to the speedy trial right and the right to be free from unreasonable seizures. The Sixth Amendment right to a speedy trial, however, "detaches upon conviction," and so does not apply to Plaintiff's appeal. *Betterman v. Montana*, 136 S.Ct. 1609, 1613 (2016). The Fourth Amendment's protection against unreasonable seizures likewise does not apply because the county clerk cannot be said to have "seized" Plaintiff by delaying in filing the appellate record. *Cf. Scott v. Harris*, 550 U.S. 372, 381 (2007) ("[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." (citations omitted)). Nor can the county clerk be said to have seized the record of appeal, as delaying the transmission of that record cannot be classified as "some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County Ill.*, 506 U.S. 56, 61 (1992) (citations omitted).

6

appellate court for a writ of mandamus—to compel the clerk to file the appellate record. *See generally* 735 ILCS 5/14.

More importantly, assuming Plaintiff could state a claim that the county employee acted intentionally, and that the delayed filing violated his constitutional rights, any such claim is untimely. The statute of limitations for an action under 42 U.S.C. § 1983 in Illinois is two years, *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016), and accrues when a plaintiff knows or has reason to know of the injury that is the basis of his claim. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). In this case, Plaintiff filed his motion to appeal on May 18, 2016, and the clerk filed the record on appeal on December 12, 2016. Thus, Plaintiff was aware of the delay in his appeal as of December 12, 2016 and had until December 12, 2018 to file suit. This lawsuit, initiated in September 2020, was brought nearly two years too late. Expiration of a statute of limitations is an affirmative defense, but when the existence of a valid affirmative defense is plain from the face of the complaint, the district judge need not wait for an answer before dismissing the suit. *Walker v. Thompson*, 288 F.3d 1005, 1009–10 (7th Cir. 2002). Plaintiff's claims against the unnamed Cook County Clerk of Court employee are thus dismissed.

**II. False Arrest**

Plaintiff's second claim, for false arrest, fares no better. Initially, the court notes a timeliness issue for this claim as well. As noted, a claim pursuant to § 1983 must be filed within two years of the claim's accrual. *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007); 735 ILCS 5/13–202. Absent a basis for tolling, that two-year clock begins to run on most claims related to searches and seizures at the time of the challenged events. *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) ("[A] Fourth Amendment claim accrues at the time of the search or seizure[.]") (citing *Wallace v. Kato*, 549 U.S. 384, 396 (2007)). The limitations period is not ordinarily tolled by a plaintiff's criminal proceedings or incarceration. *See Wallace*, 549 U.S. at 389–90, 397 (holding that for claims of false arrest in which the arrest is followed by criminal proceedings, the statute of limitations begins to run at the time the claimant becomes detained

7

pursuant to legal process). While Plaintiff's complaint does not specify when he became subject to legal process (i.e., when was he arraigned?), such process certainly began before he filed his motion to appeal his criminal charges on May 18th, 2016. (Compl. at 5.) This lawsuit, filed in September 2020, was at least a few months too late—likely longer. Plaintiff suggests that there is a basis for tolling in that his gun possession conviction was later overturned. The reasons for reversing his conviction, however, in no way suggest any defect related to Plaintiff's arrest. Therefore, all information pertinent to the validity of his arrest would have been available to Plaintiff at the time of the arrest in 2015. *See Johnson v. Guevera*, No. 05 C 1042, 2007 WL 2608525, at *2 (N.D. Ill. Sept. 5, 2007) (Grady, J.) (finding that a plaintiff is aware of his injury at the time of the arrest).

Timeliness aside, there is no basis for a challenge to Plaintiff's arrest, as it was supported by probable cause.[5] *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) ("Because the presence of probable cause makes a warrantless arrest reasonable under the Fourth Amendment, the existence of probable cause is an absolute defense to a § 1983 claim for false arrest."). A police officer has probable cause to arrest a suspect when the facts and circumstances known to the officer at the time of the arrest would cause a reasonable person to believe that the suspect has

---

[5] In some circumstances, a plaintiff's subsequent criminal conviction will raise a collateral estoppel bar to any § 1983 false arrest claim. *See Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir. 1990) ("[A] plaintiff's previous conviction collaterally estops the plaintiff from reasserting a lack of probable cause."). As explained in *Lang v. City of Round Lake Park*, 87 F. Supp. 2d 836, 843 (N.D. Ill. 2000), however, the principle in *Currier* appears limited to circumstances in which the evidence supporting the plaintiff's arrest is identical to the evidence supporting the plaintiff's conviction. Similarly, not all false arrest claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because the facts known to an officer at the time of an arrest may differ from the facts underlying the conviction. *See, e.g., Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1995) ("Because an illegal search or arrest may be followed by a valid conviction, a conviction generally need not be set aside in order for a plaintiff to pursue a § 1983 claim under the Fourth Amendment."). In this case, evidence that Plaintiff did not possess a valid FOID or concealed carry license was introduced at his trial. *See Beck*, 2019 IL App (1st) 161626 ¶ 22, 131 N.E.3d at 1118. But it is not clear that the arresting officers were aware of this information at the time of the arrest. Plaintiff's AUUW convictions may therefore be premised on information that was not available when he was arrested, meaning that his false arrest claim is not automatically precluded by his valid convictions.

committed a crime. *Matthews v. City of E. St. Louis*, 675 F.3d 703, 706 (7th Cir. 2012). The presence of "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (citation omitted).

Moreover, a warrantless arrest "may be supported by probable cause that the arrestee committed *any* offense, regardless of which crime was charged or which crime the officer thought had been committed." *Gutierrez v. Kermon*, 722 F.3d 1003, 1012 n.3 (7th Cir. 2013) (emphasis in original) (citations omitted); *Conner v. Vacek*, 806 Fed. App'x 485, 489 (7th Cir. 2020) ("[P]robable cause to believe that a person has committed *any* crime defeats a claim of false arrest, so long as the officer's belief is reasonable based on what was known to him at the time.") (emphasis in original) (citations omitted). The fact that criminal charges are later dropped or reversed "has no consideration in the determination of probable cause at the time of arrest." *Burritt*, 807 F.3d at 249; *see Dyson v. Vill. of Midlothian*, No. 12-cv-7632, 2015 WL 778850, at *5 (N.D. Ill. Feb. 18, 2015) (Guzman, J.) ("That an arrestee is eventually acquitted of the charges against him or her (or has them dismissed) is not dispositive of whether the officer had probable cause to arrest.").

Illinois law prohibits possession of a concealed handgun that is loaded and accessible without a valid license to do so. *See* 720 ILCS 5/24-1(a)(4), 24-2. The officers had received a report that a person matching Plaintiff's description had a gun, and Wyroba observed Plaintiff putting a gun into his pocket. Given that Plaintiff fled and discarded the gun before police even approached him, it was not unreasonable for Defendants to believe he possessed the gun illegally. Plaintiff, therefore, fails to state a claim that his arrest was unsupported by probable cause, and his false arrest claim is dismissed.

### III. Wrongful Incarceration

Plaintiff also alleges that Defendants violated his constitutional rights because, in total, he served thirty months in prison when he believes he should only have served fifteen months for his

9

AUUW convictions. A plaintiff may state a federal claim that he was held "beyond the term of his incarceration without penological justification, and . . . the prolonged detention was the result of the defendants' 'deliberate indifference.'" *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (citing *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). Those circumstances are not present here. For the duration of Plaintiff's thirty-month incarceration, he was being held based on a valid conviction and sentence. Regrettably, his appeal was not decided until after he had completed his original sentence, but no state actor was deliberately indifferent to Plaintiff's purportedly prolonged incarceration; the sentence was still valid up until the date the appellate court reversed it. Plaintiff cannot state a claim that officials should have been aware Plaintiff was incarcerated too long and should have taken action on his behalf.

To the extent Plaintiff may be seeking to present a state-law claim for false imprisonment, his claim is not properly asserted in federal court. Federal courts may exercise jurisdiction only over federal claims, state-law claims where the parties are of diverse citizenship, and state-law claims properly joined with federal claims. Because Plaintiff has not stated any federal claims, this court can consider his state law claims only if the parties are diverse in citizenship—that is, citizens of different states—and if at least $75,000 is at stake. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758, 759 n.2 (7th Cir. 2009); *see* 28 U.S.C. § 1332(a). Defendants, City of Chicago employees, are located in Illinois. Plaintiff has been arrested in Chicago several times within the past five years; the court presumes he too is an Illinois resident. *See* Chicago Police, Search Arrests, http://publicsearch1.chicagopolice.org/Arrests?FirstName=anterius&LastName=beck&CbNumber=&ChargeId=&CPDArea=&District=&Beat= (last visited Dec. 15, 2020); *Bontkowski v. Smith*, 305 F.3d 757, 763 (7th Cir. 2002) (holding that a prisoner is a citizen of the state of which he was a citizen before incarceration, unless he plans to live elsewhere when he gets out, in which case he is a citizen of that state). Plaintiff has not established that this court has diversity jurisdiction over any state-law claim.

### IV. Malicious Prosecution

Next, Plaintiff seeks to state claims for malicious prosecution against the arresting officers. This judicial circuit, however, does not recognize a federal claim for malicious prosecution. *See Manuel v. City of Joliet* ("*Manuel II*"), 903 F.3d 667, 670 (7th Cir. 2018). And again, because Plaintiff is not diverse in citizenship from Defendants, this court will not exercise jurisdiction over his state law malicious prosecution claim.

The court need not address this claim in depth but notes a concern about whether any such claim could proceed on its merits. The Seventh Circuit has characterized "a malicious prosecution action against police officers [as] 'anomalous.'" *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996) (quoting *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994)). "This is because the [prosecutor], not the police, prosecutes a criminal action. It is conceivable that a wrongful arrest could be the first step towards a malicious prosecution. However, the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." *Reed*, 77 F.3d at 1053. To the extent that Plaintiff's malicious prosecution claim rests on the allegation that the arresting officers testified at his trial, the court warns that witnesses, including police officers, are immune from lawsuits flowing from their testimony in court or before a grand jury, even if the claimant alleges that the testimony was false. *See Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) ("[A] grand jury witness [including a law enforcement officer] has absolute immunity from any § 1983 claim based on the witness' testimony . . . . "); *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) ("The Constitution does not require that police testify *truthfully*; rather the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies.") (emphasis in original) (internal quotations omitted).

### V. Chicago Police Department and the City of Chicago

Had Plaintiff's allegations survived threshold review, the court would likely dismiss any claims against Chicago Police Department or the City of Chicago. The Chicago Police

11

Department has no legal existence independent of the City of Chicago and, therefore, is not a separate suable entity. *See Casimir v. City of Chicago*, No. 15 C 3771, 2017 WL 896768, at *3 (N.D. Ill. Mar. 7, 2017) (collecting cases). As for the City of Chicago, Plaintiff appears to have named the City because it employs the police officers who were involved in his arrest. Under § 1983, however, a governmental entity "cannot be held liable solely because it employs a tortfeasor." *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Thus, any claims against the City are dismissed.

## **CONCLUSION**

Plaintiff's complaint is dismissed. Although this court typically allows plaintiffs an opportunity to submit an amended complaint to cure deficiencies in an original complaint, amendment would be futile in this case given that Plaintiff's claims are either untimely or not cognizable under § 1983, and given that it does not appear Plaintiff can adequately allege the elements of diversity jurisdiction. *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (holding that a court need not allow the filing of an amended complaint "where the amendment would be futile") (citation omitted). The dismissal is with prejudice as to federal claims but without prejudice as to any state-law claim (such as false imprisonment and malicious prosecution) he may wish to file in state court. The dismissal of this case counts as one of Plaintiff's three allotted dismissals under 28 U.S.C. § 1915(g). If Plaintiff accumulates three § 1915(g) dismissals, he will be barred from proceeding with a civil case in this court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *See* § 1915(g).

If Plaintiff wishes to appeal, he must file a notice of appeal in this court within thirty days of entry of judgment and pay the $505.00 filing fee. FED. R. APP. P. 4(a)(1). If Plaintiff seeks to pay the appellate filing fee with monthly deductions from his prison or jail trust account, as he is doing for this court's filing fee for this case, he must file another *in forma pauperis* application. If he seeks to proceed IFP on appeal, his application must identify the issues he intends to raise on

appeal. *See* FED. R. APP. P. 24. If the appeal is without merit, Plaintiff could receive a strike under 28 U.S.C. § 1915(g).

Plaintiff need not bring a motion to reconsider this court's ruling to preserve his appellate rights. If, however, he wishes the court to reconsider its judgment, he may file such a motion under FED. R. CIV. P. 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of the entry of this judgment, and this period cannot be extended. FED. R. CIV. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* FED. R. APP. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment. The time to file a Rule 60(b) motion cannot be extended. *See* Rule 60(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* FED. R. APP. P. 4(a)(4)(A)(vi).

ENTER:

Date: December 15, 2020

_____
REBECCA R. PALLMEYER
United States District Judge

13